TEXAS & P. RY. CO. v. PROTHRO.
(No. 1394.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 2, 1915. On Motion of Appellant for Rehearing, Feb. 25, 1915.)

On Rehearing.

MASTER AND SERVANT ☞279 — INJURY TO BRAKEMAN — NEGLIGENCE OF ENGINEER — SUFFICIENCY OF EVIDENCE.

In an action for injuries to a brakeman, thrown from the train while attempting to board it, in which a verdict for plaintiff was based on the negligence of the engineer in starting the train when he knew, or should have known, that plaintiff was working on a hot box, evidence *held* to show that it was the engineer's duty to start the train on signal from a brakeman or other employé, and not his duty to ascertain the position of plaintiff, and hence insufficient to sustain the verdict.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 973–975, 978–980; Dec. Dig. ☞279.]

Appeal from District Court, Harrison County; H. T. Lyttleton, Judge.

Action by J. R. Prothro against the Texas & Pacific Railway Company. From a judgment for plaintiff, defendant appeals. Reversed, and cause remanded for new trial, on rehearing.

Appellee's place as the rear brakeman on one of appellant's freight trains was in the caboose. It became necessary to cool and repack a "hot box" on the car next to the locomotive. While the train was taking water at a tank at which it had been stopped, appellee went from the caboose to the car mentioned and began to work on the hot box. Before he had time to complete the work the train started on its way. In attempting to get aboard one of the cars as the train moved on, appellee fell and had one of his feet so crushed by a wheel of one of the cars passing over it as to necessitate the amputation of the big toe thereof. In his petition appellee alleged that while he was engaged in the work mentioned—

"the persons in charge," quoting, "of the engine, without any warning and without any signal

from the plaintiff authorizing and permitting them to do so, started the said train and continued to increase the rate of speed thereof, and that it being the plaintiff's duty to get upon the said train, and especially upon the caboose thereof, where his duties were to be discharged, that the plaintiff intended to get upon the caboose of the said train, but the persons in charge of the engine had increased the speed of the engine to such an extent that when the first box car reached the plaintiff he felt that it was his duty to endeavor to get upon the said box car, fearing that by the time the caboose reached him it would be going so fast it would be impossible for him to get upon it. And the plaintiff shows that, believing that he could catch the said box car and get upon the same, he caught the handhold upon the box car and endeavored to get upon the same, but that by reason of the speed of the train and by reason of the [act of the] engineer in suddenly and rapidly increasing the speed thereof the plaintiff's foot was caused to slip, that the plaintiff was jerked and thrown from the said train by the speed and rough handling thereof, and fell with his foot under the train," etc.

The appeal is from a judgment in appellee's favor for $3,000.

The evidence is believed to be sufficient to support findings, and we find that appellee, without fault on his part, was injured as alleged, as the result of negligence on the part of appellant as charged in the petition.

F. H. Prendergast, of Marshall, for appellant. S. P. Jones, of Marshall, for appellee.

WILLSON, C. J. (after stating the facts as above). We do not agree that:

"There was not," quoting from appellant's brief, "sufficient evidence that the engineer knew of plaintiff's danger, or could have known of same by ordinary care, and no evidence that the effect of increasing the speed of the train at that time would be negligence on the part of the engineer."

It appeared that the train had stopped at a water tank to take water for the locomotive. It remained at the tank about five minutes. During that time appellee engaged in working on the hot box. He had brought with him from the caboose two iron rods and a three-gallon bucket containing grease and waste, to use in doing the work. While he was engaged at the work, the engineer, appellee testified, "came around and saw what he was doing." The engineer's position, when operating the engine, was on the right-hand side thereof. Appellee, while working on the hot box, was on the same side of the engine, and only 60 or 80 feet from it. From the facts recited we think the jury might have found that the engineer knew, or as a reasonably prudent person should have known, when he started the train, that appellee, as he, without contradiction, testified was true, had not completed, but was still engaged at, the work on the hot box.

We think it should be said from the record that the engineer knew that appellee's place on the train was in the caboose, and that it would be necessary for him, carrying the bucket and iron rods, to board the train, and

that he (the engineer) knew there was a bridge between the car appellee was working on and the caboose, which would prevent appellee from going back toward the caboose, and knew that there were a number of coal and flat cars loaded with scrap iron and lumber between the car appellee was working on and the caboose, which he would not be able, because of their character and the way they were loaded, to get upon as they passed, and therefore knew that it would be necessary for appellee to wait where he was and endeavor to get aboard one of the box cars or the caboose following them, after it crossed over the bridge. The jury, we think, might have found that the engineer, knowing those facts, as a reasonably prudent man, should have contemplated that appellee might attempt to get aboard the train as he did, and, contemplating that he might make such an attempt, should not have run the train as fast as he did (at the rate of 12 or 14 miles an hour), and should not, in operating it, have caused it to give a sudden jerk, as appellee testified it did when he grasped the grabiron to get aboard of it.

Whether it should be said, with reference to the act of Congress of 1908, known as the "Employers' Liability Act" (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1913, §§ 8657–8665]), which was applicable to the case, that appellee was not entitled to recover, because it appeared from the evidence, as appellant insists it did, that the risk appellee incurred in attempting to get on the train as he did was one he assumed, need not be determined, in view of the fact that appellant in its pleadings did not claim that he had assumed the risk. "Assumption of risk," to be available as a defense, must be pleaded. Price v. Oil Co., 41 Tex. Civ. App. 47, 90 S. W. 717; Railway Co. v. Garcia, 54 Tex. Civ. App. 59, 117 S. W. 206; Railway Co. v. Harris, 95 Tex. 346, 67 S. W. 315.

Appellant claimed that in June, 1913, it paid to appellee $300, which he accepted as a full settlement of his claim against it for damages for the injury he suffered. In support of its contention appellant offered, and the court admitted as evidence, a written instrument, signed by appellee, in which it was recited that in consideration of $300 paid to him by appellant he had released all claim he had against it for damages for the injury he had sustained. Appellee admitted that appellant had paid him the $300 as stated in the writing, but contended that as a further consideration for the release it had agreed that he might continue in its service as a brakeman "just as if he had never been injured." He further contended that appellant thereafterwards refused to comply with its agreement to continue him in its service as a brakeman, and that he thereupon returned to appellant the $300 it had paid to him, notifying it that he did so because of its refusal to comply with that part of its agreement, and that ap-

pellant accepted and ever afterwards retained said $300.

In making the settlement in question appellant was represented by one Saling, a clerk in its claim department at Dallas. Appellee testified that he told Saling that appellant's trainmaster at Marshall had offered, as a settlement of his claim, to have the company pay him half time and let him go back to work, but that he declined the offer because he thought he should have full time. Saling replied that "he did not know what they would do, whether they would give him any better than half time or not," but that he would take up the matter with appellant's legal department. Saling, appellee said, "seemed very busy that morning," and wanted appellee to come back in the afternoon. Appellee then told Saling he was in a hurry to get back to Marshall and go to work. In the afternoon Saling told him, appellee testified, "they would not agree to give him straight time, but, if he was in a hurry to get back to work, he [Saling] would make it a lump sum of $300, and he could come on back to work." Appellee then "spoke about having any trouble in getting back to work," and Saling replied "that they would attend to that." Appellee testified that Saling then paid him the $300 and gave him a letter, addressed either to Trainmaster Brown or his superior, and that when he got back to Marshall he delivered the letter to Brown and offered to go back to work. Appellee further testified that Brown was angry because he had made the settlement with appellant's Dallas office, instead of with him, and refused to put him to work, and that he (appellee) thereupon returned the $300 to appellant, with a letter advising it he did so because of such refusal, and then instituted the suit resulting in the judgment from which this appeal is prosecuted. Appellant did not deny that it had received the $300 returned to it by appellee, and did not pretend in either its pleading or evidence that after receiving same it regarded the money otherwise than its own. Saling testified that, in the negotiations between him and appellee resulting in the settlement, the latter said nothing about going back to work, but he further testified:

"I thought he was going back to work. I assumed that he was. We don't refuse to employ a man because he gets hurt. * * * I thought Mr. Prothro was expecting to go to work. The reason I know he did not mention it to me is because, when they mention it, I tell them right off I have nothing to do with their going back to work."

We think the testimony referred to was sufficient to support a finding that it was understood and agreed between Saling and appellee that the latter was to be paid $300 and to be retained by appellant in its service as a brakeman as if he had not been injured, as the consideration for a release by him of his claim for damages against it, and a finding that appellant had refused to comply with the under

taking, so far as it was to continue appellee in its service as a brakeman.

Appellant, however, insists that the testimony relied upon to show that Saling agreed that appellee should be retained in its service was inadmissible, because its effect was to vary the terms of the settlement as evidenced by the writing, and further insists that if Saling so agreed it did not create an obligation on its part to retain appellee as a brakeman, because it did not appear from the testimony that appellee had bound himself to work for it—in other words, that the agreement, for lack of mutuality, was not binding on it.

As to the first of the two contentions, it is clear that the testimony referred to was admissible under the allegations in appellee's supplemental petition, charging that he was induced to execute the release as the result of "fraudulent statements and representations made to him to the effect that he would be given said job or employment, and would be permitted to enjoy the privilege of working for the said defendant railway company just as if no injury had been received by him," etc. And, in the absence of such allegations on the part of appellee, appellant should not be heard, on the ground stated, to complain here that the testimony was inadmissible, because it is not made to appear that he objected to its admission when it was offered in the court below.

As to the other of said contentions, it should be noted that appellee's suit was not to enforce a performance by appellant of its undertaking under the agreement, but was to recover against it as he would have been entitled to in the absence of any agreement for a settlement of his claim. In other words, appellee, having returned to appellant the money it had paid him, was in the attitude by his suit of treating the agreement as rescinded, and therefore no longer binding on either him or appellant. In accepting and retaining the money, without in any way questioning appellee's right to so rescind the contract, we think appellant should be held to have acquiesced in appellee's claim of a right to rescind it. As stated before, there is nothing in the record showing that appellant did not claim the money as its own after same was returned to it by appellee. On the contrary, by retaining it as it did, we think appellant was in the attitude of claiming the money as its own, and that it should not have been heard to say, so long as it remained in that attitude, that appellee was not entitled to treat the agreement as no longer in force.

It is insisted that the verdict was for a sum in excess of the damages shown. As the sum found does not of itself indicate, and as there is nothing in the record that does indicate, that the jury, in determining the sum, were influenced by anything except their sense of duty, the contention is overruled.

The judgment is affirmed.

### On Motion of Appellant for Rehearing.

The judgment was based on findings involved in the verdict of the jury that the engineer knew, or in the exercise of ordinary care could have known, that appellee had not boarded the train at the time it started on its way, and therefore, under the circumstances shown by the testimony, was guilty of negligence in the manner in which he operated the engine. We thought the findings were not without the support of testimony in the record, and in disposing of the appeal found that appellee was injured as the result of negligence on the part of appellant. It is insisted in the motion that a duty to ascertain whether appellee had boarded the train or not, before starting same, did not in the facts of the case rest upon the engineer; and it is further insisted that there was no testimony tending to show that the engineer knew appellee had not boarded it. We are of opinion the contention should be sustained. There was no testimony showing that the engineer knew that appellee had not gotten aboard the train at the time he started the engine. The brakeman, Maloney, testified that he signaled the engineer to start the train. It is believed the engineer had a right to act on the signal so given to him, without stopping to ascertain whether appellee had boarded, or was in a position where he could safely board, the train or not, and that, in the absence of proof showing that he knew the truth to be to the contrary, a finding that he was negligent as charged was not warranted. On the case made by the testimony it seems that the negligence, if any there was, for which appellant was liable, was the act of the brakeman who gave the signal to the engineer, or of the one of appellant's employés responsible for its being given as it was.

It is insisted that the statement in the opinion that the engineer "knew there were a number of coal and flat cars loaded with scrap iron and lumber between the car appellee was working on and the caboose, which he would not be able, because of their character and the way they were loaded, to get upon as they passed," etc., is without support in the testimony. As we find on a further examination of the record that the statement is without such support, it is withdrawn.

The motion will be granted, the judgment heretofore rendered by this court will be set aside, and the judgment of the court below will be reversed, and the cause will be remanded for a new trial.